James Lamb enlisted Shire for petitioner Cintia Perez Zamora. We asked the court to reserve three minutes for rebuttal. Ms. Shire will address the cat claims. I'll tackle asylum and withholding of removal. This court should reverse and remand for two reasons. First, this court's precedence established foundation for gender-based particular social groups. Second, Perez Zamora's persecution would not have occurred but for her membership in a particular social group, young women without the protection of their parents. Starting on premise one, under Brigas-Rodriguez v. Sessions, membership in a particular social group of gay Mexican men and boys stems in part from its members' exhibition of female secondary sex characteristics. Gender undergirds this court's cognizance of Brigas' sexual orientation-based social group. Similarities between Brigas-Rodriguez and Perez Zamora abound, such that Brigas-Rodriguez v. Sessions should control the outcome of the present case. So, Mr. Lamb, let me ask you a question. I read your brief carefully and it tees off of Brigas-Rodriguez, like as you just started out, but there's been a there was a significant opinion by the Ninth Circuit in a case called the Diaz-Reynoso v. Barr. Yes, Your Honor. How does that change your argument or shape your argument? Well, Your Honor, Perez Zamora's persecution would not have occurred but for her membership in a particular social group of young women without the protection of their parents. Under Diaz-Reynoso v. Barr, the idea that the inclusion of persecution in a particular social group definition would act as some sort of poison pill did not, for that court's reasoning, withstand scrutiny. But in the present case, there was never any circularity. Perez Zamora's trial attorney stated that her particular social group, young women without the protection of their parents, and she stated that twice before the immigration judge on page 130 of the record between lines 12 and 13 and then later on on that page in lines 22 through 23. Twice when evaluating Perez Zamora's proposed particular social group for social distinction and particularity, the IJ referred to that PSG as, you guessed it, young women without the protection of their parents. The notion of there being a longer form of this that included persecution at all was simply in error. Okay. The record compels the understanding that Perez Zamora's proposed particular social group simply didn't include that material. But more to the point, Briggs Rodriguez v. Sessions shows us a petitioner who was raped, was beaten as a child, suffered all manner of persecution. The same thing was happening with the present petitioner. Both were persecuted through sexual assault and rape as minor children when both applicants were home alone with persecutors. Briggs' abuser threatened to harm his grandmother should he report to authorities. Cynthia understood that if she reported, reprisals against her Cynthia was only attacked by men from her grandmother's neighborhood while she was alone at home. Men who knew or had reason to know Cynthia was a young woman without the protection of her parents. Never happened when the parents were in country. It's never happened. In fact, one persecutor, Wilbur Cordova, showed a kind of nonchalance, just a no fear of reprisal whatsoever when years later he approached Cynthia and asked her if she remembered what had happened between the two of them. The point here is that when it comes to protecting women and girls, Guatemala is a failed state. Cynthia's personal experiences, her familial experiences, and the State Department country condition reports all attest to the notion that if you are a minor child without the protection of your parents. So, you know, I understand all of that, your arguments, but what's at hand here is did the BIA air? And if so, how did it air? And what do we do? The BIA's analysis, your honor, used an indifference to the possibility that Brigas Rodriguez's sessions would control the present case. Brigas Rodriguez stands for the proposition that if you happen to be a minor and you undergo this kind of persecution, the expectation that you're going to run off to the authorities and pursue a law enforcement solution to the problem is not what we would expect from a minor child so traumatized. Further, Brigas Rodriguez stands on the long line of sexual orientation based particular social groups that themselves use, well, in essence, gender to understand themselves as sexual orientation social groups. This is Hernandez Montiel of the INS, Reyes Reyes v. Ashcroft, Ornelas Chavez v. Gonzalez, Castro Martinez v. Holder. In each of these cases, the understanding of the members of the particular social group involve gay men who present in part as women. So, in essence, the remedy for the present case would be to afford the same understanding that was afforded in Brigas Rodriguez to the present petitioner. The violence is the same for the same purpose. We have direct evidence of the violence in Brigas. The father between beatings saying to Brigas, act like a boy, you are not a woman, to maintain his understanding of stratified gender roles. In the present case, we have circumstantial evidence, but we're still talking about depraved male individuals who are seeking out a young girl for sex. As grotesque as that is, it stands under, it is the persecution that you'd want parents to protect a child from. And when these parents were in country, when they were not available, that made Cynthia Perez Zamora a member of the particular social group of young women without the protection of their parents. Let me ask you this. Did the BIA error make a legal error? Are you saying it's not supported by substantial? I don't quite understand your argument. Your Honor, the BIA erred when it was unable or unwilling to apply the holding of Brigas Rodriguez to the present case. The error was the indifference toward using the analytical framework under undergone in Brigas. In essence, what Brigas is asking the court to do, what the BIA to do, is to look at the IJ's ruling and understand first, the young women without the protection of their parents with a particular social group. And second, that gender-based particular social groups like that one were cognizable under the definition. That was the error that they made. There was a basic reasoning error, but this court can address it. There was no certainty here, Your Honor. Again, when the BIA erred, they assumed that because in the second form of this, lines 23 to 23 of page 130 in the record, they assumed that the argument was, I see this persecution. I see violence along with the definition. Definition isn't possible. Okay. So that the clock sort of was, is a little messed up, but you're down to, you've used your seven minutes. And so you wanted to, you wanted to share time with your co-counsel. Yes, Your Honor. Thank you for your help. Let's hear from her. We just lost her. I think she's walking down the hallway. There she is. Good morning, Your Honor. Okay. Thank you. I'll be discussing the Kat claim today. So I'd like to first say that we'd like the court to reverse and remand for two reasons. First, that both the BIA and the respondent used the improper standard to calculate the risk of torture upon return that the respondent faces. Second, we also ask that the court reverts because the BIA's speculative conclusion lacks basis in the record. The aggregate analysis standard under Quijada-Lenz, which this court had in 2015, shows that the BIA must use the cumulative risk of all sources of torture upon return that Cynthia faces. Here, the BIA failed to engage in significant record evidence, both Cynthia's credible testimony that the immigration judge found to be credible despite Cynthia's young age, and the country conditions report, which provides objective evidence that further bolsters Cynthia's credible testimony. Diaz-Reynoso v. Barr, as Your Honor mentioned earlier, was a recent case. And here the court reversed and remanded a Kat denial because the BIA did not consider all relevant evidence, including country conditions reports. Here the BIA failed to consider country conditions report as well. And the country conditions report outlines the definitive risk of rape and sexual assault that young women and girls like Cynthia face. Second, I'd like to point to the credible testimony and how it must be given sufficient weight once it's deemed credible under this court's decision. The BIA failed to give any weight to Cynthia's credible testimony. Her credible testimony described not one, but two sexual assaults that she experienced at the age of 10. It also described a death threat by a gang member who wanted to coerce her into another sexual relationship. This credible testimony was dismissed by both the BIA and the respondent, simply saying that it was speculative. But however, under this court's decision, once this testimony is deemed credible, the testimony itself is evidence, as well as all reasonable inferences that we can take from it. And they must be taken as true once the testimony is deemed credible. Here the respondent state. Let me ask you a question, Ms. Shire. As I understand it, one of the things that the BIA said was that none of this was reported to local police. Is that right? So how old was she at the time that these incidents took place? 10 for the first rape and the attempted rape, and then she was 14 with the death threat. So how should that factor into the analysis of whether she was obligated to report to the police? So under the CAT consideration, because it is trying to protect petitioners from torture, which often happens at the hands of government, there is no reporting requirement, which this court also, again, reiterated in Bring Us Rodriguez. So despite the fact that she did not tell anyone because she was so afraid, which she describes in her credible testimony, that shouldn't affect the analysis at all. We can't expect a 10-year-old girl whose family members have had really negative experiences reporting violent incidences to the police, such we can't expect her herself to go ahead and tell the police when she's afraid of reprisal. In her testimony, she talked about the fact that it's well known in her community that the police do not do anything to report or to investigate or solve violent crimes or really crimes of any kind. So let me ask you this. Did the BIA make an error of law in your view, or is this decision not supported by substantial evidence on this point because of her age in the analysis? I would argue both. So first, they used the improper standard. They did not use the aggregated analysis where they assessed each source of torture cumulatively. And then second, as to the substantial evidence, they also failed to consider record evidence. That is really important for Cynthia's case. They failed to consider her credible testimony, and they absolutely omitted any discussion of country conditions report. They merely say Guatemala is trying to protect women, which is an insufficient analysis under this court's in Diaz-Reynoso. I'd also like to turn to our other point, which is that Cynthia's testimony, despite being deemed credible, the BIA concluded that the testimony was speculative. However, again, this is an error because her testimony is backed up by both the finding of credibility, which means we must take it as record evidence, as well as the inferences as true, and we also must engage with the country conditions report. So here the BIA failed to do both of those things. If they had done those, they would have a basis to see that her testimony is not speculative, is in fact backed up by objective record evidence as contained in the country conditions report. So for these reasons, we ask that the court reverse and remand using the proper analysis, the aggregated analysis of the cumulative risks of all torture upon return that Cynthia faces when she returns to Guatemala. If this court would consider that, that's all we have for this Okay, thank you. And now we'll hear from the government. Good morning, your honors. May it please the court, Andrew Nzinga on behalf of the attorney general. Recognizing that victims of crime are often not going to be eligible for asylum or related protection, petitioners often craft random and ever-morphing particular social groups to try to dovetail into a protected ground. In many cases and here, however, the record evidence simply doesn't tell the reversal agency's findings on nexus, cognizability, unwilling or able to control, or acquiescence. As petitioner says, these are depraved male individuals, but their depravity and the vileness of the crime doesn't change evidentiary requirements or legal requirements. First on nexus, the record doesn't compel reversal because petitioner must show evidence, must actually point to evidence in the record that compels the conclusion that these depraved individuals didn't act just simply because they were depraved, but because they wanted to overcome the trait or had some animus towards the trait. The opening brief doesn't discuss any evidence. In the reply brief, there's one piece of evidence, and that's the only piece of evidence petitioners ever presented to this court to claim compels reversal. But it's essentially a non-sequitur. Says that one of the criminals asked if she remembered what happened. That's it. It's nasty, it's malicious, but how does in any way when a criminal goes to a victim of any crime, this is, do you remember what happened? What does that tell us about motive? Nothing. What does it tell her? Perhaps she has a particular religion. Perhaps she has, is in a particular, she's in a sewing group. Perhaps it tells us nothing about whether he was motivated or they were motivated to overcome that particular trait. So does this, does your nexus argument hinge on an assumption that she stated a proper social group, even assuming she's got a proper social group? No, Your Honor. It doesn't hinge on their being a proper social group at all. You could, petitioners, as I said, there's an ever-morphing social group. You could cut off the circular part as defined. Petitioners then tried to add on Guatemala as a narrowing factor. Then the reply brief has taken that back off. There's an equal protection argument about female children that was never presented to the agency. The thing is, there's no evidence. Where is evidence that the petitioner, that these depraved individuals wanted to overcome or were motivated by animus towards that group? Where is evidence? Regardless of how we define, even as it's changed over time, there's no evidence support. So your argument is simply that she was just the object of violence. Well, that's all the record evidence. So she was found, she was found credible and she said that she was raped. Justify that she was raped. So she was found credible and she was a victim of a crime. But as I saw, it's a pretty serious crime. Absolutely. Serious. I mean, there is a crime. Your argument is that it was just part of general violence or just some depraved individual. Petitioner just said these are depraved male individuals. That's petitioner's own argument. And the government agrees these are depraved male individuals. But what petitioner has to present to the agency is record evidence that those depraved individuals are motivated by something, the mere criminal motivation. If you accept her social group, young women without the protection of their parents, is that how she framed it? Well, the phrase in the agency that petitioner wants to avoid is the only one that's before the court is young women without the protection of the parents, which then made her a target, which, of course, on its face is circular, which is why petitioner wants to change it. So let me ask you this. So how does our recent case of Diaz-Reynoso fit into this analysis, which the BIA didn't have at the time it handed down its opinion? Well, for Nexus, it says nothing. Diaz-Reynoso is purely about cognizability. So for Nexus, it's irrelevant. What petitioner has to present to this court is evidence that these criminals were motivated by. On cognizability, it doesn't change the analysis either. First of all, the social group is the one presenting the agency. That's Honcharol. The agency cannot simply take over control of how petitioner presents her case. Petitioner was- No, I'm not quarreling with that. I agree with you that our case law recognizes that the particular social group must be presented to the agency, and the agency must have a chance to determine whether or not it's cognizable. But we came along after the AG's opinion. Was it AB or what's the name of that case? Correct, Your Honor. Matter of AB. Yeah, Matter of AB. And we came around and we sort of gave some meaning to it. Well, Matter of AB is- Regarding circularity. Well, the court in Diaz-Reynoso recognizes circularity has been a concept since 2006 in Matter of CA. In fact, Diaz-Reynoso only undermines petitioner's argument because Diaz-Reynoso says, well, yeah, circularity has been an issue for a long time. The only error that the agency found was that Matter of AB found a particular social group was not cognizable, and the board didn't do sufficient analysis because the groups are so similar. But given the agency didn't have in this group, the group currently proposed to the court isn't the subject of any published precedent, the agency necessarily had to do that case-by-case analysis. And here, it's not particularly complicated because on its face, the one percent of the agency is that which then made her a target. Diaz-Reynoso does not help petitioner in any way. To go briefly on to the unwilling, unable to control on Diaz-Reynoso, Diaz-Reynoso doesn't help petitioner either for either CAT or unwilling, unable to control. The only issue in CAT was that the agency, the government, agreed to remand because that petitioner reported the crimes to people with some authority in her community. Now, that's not required, but the agency didn't consider it, and the government said that had to be remanded. That was the issue in Diaz-Reynoso. So we don't have that in this case. Yeah, but Diaz-Reynoso says that just because there's some persecution or some harm is wrapped into the proposed social group, that doesn't preclude finding that the proposed group is a cognizable group, because you have to look at whether, you have to sort of cut out the persecution and look at the proposed group and ask whether or not that group meets the test for a particular social group. Social distinction and the other factors as well. Well, with all due respect, the court never said in Diaz-Reynoso that the job of the agency is to cut out the section that is deemed improper. But I understand Diaz-Reynoso saying that just because there's some harm or persecution is tied to the definition or to the proposed social group, that that doesn't preclude finding of a particular social group. It doesn't preclude finding it, but the crux of Diaz-Reynoso, the primary holding is that circularity has been and is a proper consideration. Now, does it preclude absolutely? No. You have to look at it in a case-by-case analysis. And that's all the error that was found in Diaz-Reynoso. And that's what the agency conducted. Her claim before the agency was that Bader Target and that group being Bader Target. That was baked into the definition presented to the agency. Now, again, the ever-morphing particular social groups that the court presented, whether it's in Equal Protection or Applied, certainly highlight the failure. So when I read that passage in the decision, both the BIA and the IJ's decision, it was like counsel was saying, this is the proposed social group which rendered her a target. That would be a fine argument for a petitioner to have presented to the agency. But what then we need to look at then is the appeal brief to the board. The agency, the immigration judge specifically quoted that section exactly. Petitioner's reply brief to the board says nothing about, well, that was just an explanation. It's not an unreasonable explanation. It's a possible argument. But here we are years later, and what we are is reviewing the agency's decision based on the claim presented to the agency. Not on a new social group or new argument years later down the road. We're reviewing the agency's decision. The agency doesn't err and say, well, this is how you defined it. And then petitioner never says, no, no, no, that's not what I meant. That's what petitioner said the agency messed over with. On unwilling or unable to control as well as sort of acquiescence, well, I think first on cat, you know, it needs to be addressed. Petitioner often talks about this aggregate issue. Aggregate deals with the likelihood of torture. But when we look at the agency's decisions, the agency didn't deny because of likelihood. There's two requirements, likelihood and acquiescence. The agency talked about acquiescence. So petitioner's argument simply misses the mark. It has no relevance to the agency's actual finding. So what do we do with her age? Well, the agency, the immigration judge obviously recognized she's young, but Pringles Rodriguez doesn't establish any definitive rule that we simply ignore her. We ignore the lack of evidence because of her age. It's fine. No, well, I guess I should have been more specific. Nobody reported these incidents to the local police or whatever might exist in her community. Can you reasonably expect a 10-year-old or 14-year-old to walk down to the police department and say, hey, I was raped. Here's who did it. Well, the agency, well, part of the discussion was even after petitioner's parents found out about the situation, was there a court? The answer was no. But a lot of this really is sort of just a sideshow because what petitioners show is where is the evidence compelling or versatile? Point to evidence. Now, petitioner says, well, I have an opinion that the police won't do anything. But as an AR-127, that's what she says. And the reason is, well, my sister was attacked with a boyfriend in a motorcycle. They went to the police. The police were like, well, who did it? And the sister said, I don't know. Now, petitioner is allowed to have an opinion. And petitioner is credible. But credibility does not equal sufficiency. We don't tell the jury, if you find this person credible, you must find what they say sufficient. Now, what petitioner doesn't do is actually address the country reports. Now, petitioner talks, I'll write to the board and talk about the country reports. Okay. Where in the country reports does it show that the government is unwilling or unable to control crime or childhood rape? Point to evidence that compels reversal. That's what the petitioner has to do. And at no point has petitioner said, this is that evidence. This is that evidence that compels reversal. The only site, finally, in the reply brief is to page AR-168. And they argue, well, that says the San Marcos police don't do anything. Except when you actually read AR-168, the only reference to San Marcos police, well, there is no reference to San Marcos police. The only reference to San Marcos is that it has a high rate of unplanned pregnancies among teens. That's unfortunate, but it doesn't tell us anything about how San Marcos police behave or whether it be unwilling or unable to control crime or whether they acquiesce. Again, it's much like the site that the criminal said that he asked if she remembered the crime. It's simply logically irrelevant. What we need, again, is regardless of age, we need evidence. Now, petitioner can talk all at once vaguely about the country reports, but point to evidence that compels reversal. Petitioner hasn't done that on either three issues for asylum withholding or for cap protection. And we ask that the court deny the petition. Okay. Thank you, counsel. Thank you, your honors. Mr. Lamb. Thank you, your honor. You reserved three minutes for rebuttal, so I'll give you three minutes on the clock. Appreciate it. I have two points and I will have one. First, evidence. There is ample evidence in the record that compels reversal. First, we have evidence that Walford, one of the persecutors, walked across the yard weeks after the first incident. Two, Wilbur Cordova approaching petitioner later on in the situation, years later, to ask about their previous trust. Three, only when the parents were gone, never before, did these incidents occur. Four, all these incidents occurred in the home. Men from the neighborhood infiltrated the yard. They walked across the yard. They walked up to petitioner while she's washing dishes or while she was asleep in her own bed upstairs. The point here is that this PSG was defined without harm. The IJ discussed it without harm. The government lawyer at the time, on page 131 of the record, did not respond with any conversations on circularity or missing the harm in evidence. And the circularity argument that was made is a mis-parsing of the record. In essence, the BIA's understanding of circularity in this is the problem, not the evidence itself. The government suggested a minute or two ago that you have to use the record as it is. And he's correct. And the record shows the second form of the PSG stated as follows. Young women without the protection of their parents, which made her a target, and as a result, she was raped. However, the government can't read past its own typography. Periods are used between the harm and the PSG. So even with the understanding from that, even mentioning at all, the persecution is not a poison pill, we're still left with the fact that there was no circularity present in this case. None. The BIA just misunderstood that and the government is misunderstanding it now. Okay. Oh, I'm sorry. Your Honor, do you have a question? No. Ms. Shirey. Your Honor, I just have one point. Again, respondent points out there is no evidence of Cynthia's risk of torture upon return. Again, this is a misreading of the record. There is evidence that both the BIA and the respondent didn't completely fail to engage, which is the death threat from the gang member who wanted to throw into sexual slavery. There is an immigration judge level at the BIA level at the respondent's police level. That goes towards her risk of torture upon return. As for the aggregate, the aggregate is the total amount evaluating all sources. It cannot have been done here. One of the sources is missing. The death threat from the gang member is a source of Cynthia's possible torture upon return. It must be remanded and reversed so that the BIA and immigration judge can actually look at this piece of evidence, which is in the record that our respondent does not believe either. Thank you. Okay. Thank you, Ms. Shirey. Thank you, counsel. We appreciate your arguments today. On behalf of the court, we'd like to thank the clinic and the law school at Irvine for their willingness to take on cases out of our pro bono program. Thank you all very much. That concludes our session for this case. It's submitted at this time.
judges: Fernandez, Paez, Owens